906 So.2d 892 (2005)
Ex parte FAMILY DOLLAR STORES OF ALABAMA, INC., d/b/a Family Dollar, and Regina Nichols.
(In re Toni Natasha Holloway; and Jeshaylin Ware and Takory Ware, minors, by and through their mother and next friend, Toni Natasha Holloway
v.
Family Dollar and Regina Nichols).
1031699.
Supreme Court of Alabama.
January 7, 2005.
*893 William C. McGowin of Bradley Arant Rose & White, LLP, Montgomery, for petitioners.
Peter A. Dumbuya, Phenix City, for respondents.
HARWOOD, Justice.
Family Dollar Stores of Alabama, Inc., d/b/a Family Dollar ("Family Dollar"), and Regina Nichols petitioned this Court for a writ of mandamus directing the Russell Circuit Court to vacate its July 19, 2004, order denying their "Motion to Set Aside Default Judgment." That motion had been filed by Family Dollar and Nichols with respect to the default entered against them in the action brought by Toni Natasha Holloway, individually and on behalf of her minor children Jeshaylin Ware and Takory Ware (hereinafter collectively "the respondents"). For the reasons hereinafter explained, we grant the petition and issue the writ.
After Family Dollar and Nichols (hereinafter collectively "the petitioners") filed their petition, we ordered the respondents to file an answer and supporting brief, and we ordered the petitioners to file a brief in reply. (See Rule 21(b), Ala. R.App. P.) The trial judge was likewise afforded the option of filing an answer and brief, pursuant to Rule 21(b). The respondents filed their answer and brief on September 20, 2004, and the petitioners filed their reply brief on September 27, 2004. The matter was submitted on petition, answer, and briefs on October 19, 2004. There being no "record on appeal" in a mandamus proceeding in this Court, we rely upon the "statement of the facts necessary to an understanding of the issues presented" contained in the petition, the copies submitted of "any order or opinion or parts of the record that would be essential to an understanding of the matters set forth in the petition," and such additional facts as are supplied in the respondents' answer. Rule 21(a) and (b), Ala. R.App. P.
The complaint filed by the respondents to initiate their action asserted that on March 17, 2002, while the respondents were departing the premises of the Family Dollar store in Phenix City, Nichols, the manager of the store, accosted Holloway and accused her of taking certain clothing merchandise without paying for it. The *894 complaint alleged that "Phenix City police officers arrived on the scene and interrogated Nichols[,] who denied that she had accused Holloway of shoplifting"; it further alleged that Nichols had in fact accused Holloway of shoplifting "willfully and maliciously and with intent to defame, embarrass, and humiliate Holloway and her minor children." The respondents alleged that the incident caused them irreparable damage, including "physical stress, mental anguish, humiliation, embarrassment and injury to their reputation." The respondents asserted defamation, tort-of-outrage, and invasion-of-privacy claims, and sought compensatory and punitive damages. Family Dollar and Nichols were served by certified mail on March 16 and 17, 2004, respectively; they do not challenge the legal efficacy of that service. On April 21, 2004, the respondents asked the clerk of the circuit court to "enter a default against the Defendant, Family Dollar," based on its failure to answer or otherwise defend in the case.
On April 22, 2004, the circuit judge entered the following order, which was filed the following day:
"This action came on the motion of the Plaintiff[s] for a default judgment pursuant to Rule 55(b)(2) of the Alabama Rules of Civil Procedure, and the defendant having been duly served with the summons and complaint and not being an infant or an unrepresented incompetent person and having failed to plead or otherwise defend, and his default having been duly entered and the Defendant having taken no proceedings since such default was entered.
"It is ORDERED, ADJUDGED, AND DECREED:
"That judgment is entered in favor of Plaintiff[s], Toni Natasha Holloway, Jeshaylin Ware and Takory Ware, minors by and through their mother, guardian and best friend, Toni Natasha Holloway, and against Defendant, Regina Nichols, individually and in her capacity as Manager of Family Dollar, as to liability. That hearing to determine damages in this cause is set for jury trial on the 2nd day of August 2004 at 9:00 AM, EDST/8:00 CDST in Courtroom II of the Russell County Courthouse, Phenix City, Alabama. That notice shall issue to the parties."
The petitioners characterize this order as "a default judgment against Family Dollar." Although it would appear that it represents a default judgment against only Nichols, albeit "individually and in her capacity as Manager of Family Dollar," we accept the petitioners' statement of the facts and proceed on the assumption that a default judgment was thus entered against both Nichols and Family Dollar. Nonetheless, it is clear that the default judgment was entered only "as to liability" and that a hearing was to be conducted later before a jury to determine damages. On June 1, 2004, the petitioners served on the respondents a motion to set aside the default judgment and filed the motion the following day in the Russell Circuit Court. The motion stated that it was filed "pursuant to Rule 60(b) of the Alabama Rules of Civil Procedure." The petitioners asserted in the motion that "Family Dollar's claim department received notice of the default judgment on Thursday, May 27, 2004" and immediately made contact with the Phenix City store; the assistant store manager advised the claim department that the manager, Regina Nichols Richardson (formerly Regina Nichols) was "out" but that she would be available the following day. The affidavit of Regina Nichols Richardson accompanying the motion explained that she had been the manager of the Family Dollar store in Phenix City for *895 10 years and contained the following pertinent information:
"I am the store manager for Family Dollar Store in Russell County, Alabama and have been for 10 years. On or about March 17, 2002, Belen Praught and I were working at the Family Store located on 280 Bypass in Phenix City, Alabama in our regular duties. As now, I was the store manager at that time while Belen Praught was an employee of the store. I went outside the store to clean up a clothing rack located just outside the entrance. While cleaning up the rack, I saw Ms. Holloway but said nothing to her. I then noticed that she backed her van up to where I was cleaning up the rack of clothes and started screaming at me and asking me what my problem was. She then said, `You think I'm stealing,' and I replied `I didn't say anything.' She proceeded to use vulgar language directed to my attention. She then left. Approximately an hour and a half later, the police came to the store. No one at Family Dollar called the police. The police questioned me about what had occurred and I told them that I did not say anything or accuse Ms. Holloway of shoplifting. On or about March 16, 2004, employee Belen Praught received and signed for a Summons and Complaint directed at Family Dollar. The next day, on March 17, 2004, I received a Summons and Complaint against me, personally. I immediately sent both the Summons and Complaint directed at Family Dollar and the Summons and Complaint against me to the home office in Charlotte, North Carolina. I heard nothing about the Summonses and Complaints until I received a call from Attorney William C. McGowin on Friday, May 28, 2004."
The circuit judge entered an order on June 3 instructing the respondents to file a reply within 30 days; they did so on June 30. Their reply asserted the following facts, supported by an attached copy of the "police report" prepared concerning the incident and copies of letters written by their attorney on September 13 and October 14, 2002, to the Family Dollar "store manager" and November 13, 14, and 19, 2002, to Roger Bolling of Travelers Insurance in Charlotte, North Carolina.[1] The facts asserted concerning the incident and its aftermath were that "[i]n light of the ensuing commotion caused by Nichols's accusations outside the store, Holloway, who had two minor children with her in her automobile, summoned the police to the scene in order to prevent a breach of the peace." The police accident report, which referred to Holloway as "Ms. Toni Lockhart," stated that she advised the investigating officer
"that as she was walking to her car after she had been shopping in the store, manager Regina Nichols walked outside and accused her of stealing some clothing. Ms. Lockhart advised Ms. Nichols was shaking a coat hanger at her and implied that the clothing that was on the coat hanger was gone. I spoke with Ms. Nichols who advised she never told Ms. Lockhart that she stole something. She stated that Ms. Lockhart stated that."
On July 19, 2004, the trial court entered an order denying the motion to set aside the default judgment, and on August 3 denied the petitioners' motion asking it to reconsider that denial.
At the threshold of our analysis, it is important to clarify the terminology appropriate to, and the implications of, some of the procedural events below.
*896 Rule 55, Ala. R. Civ. P., "Default," provides, in pertinent part, as follows:
"(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
"(b) Judgment. Judgment by default may be entered as follows:
"(1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and if the defendant is not a minor or incompetent person.
"(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor.... If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury pursuant to the provisions of Rule 38.
"(c) Setting Aside Default. In its discretion, the court may set aside an entry of default at any time before judgment. The court may on its own motion set aside a judgment by default within thirty (30) days after the entry of the judgment. The court may also set aside a judgment by default on the motion of a party filed not later than thirty (30) days after the entry of the judgment."
Thus, Rule 55 envisions a two-step process pursuant to which the clerk of the court first enters the party's default and a "judgment by default" is then entered, either by the clerk or the court, depending upon the nature of the claim. Pursuant to subsection (c), the court may set aside "an entry of default" at any time, in its discretion, before a judgment by default is entered and may also set aside, under the time limitations specified in that subsection, the "judgment by default." Accordingly, it is probably helpful to talk in terms of an entry of "default" and an entry of a "judgment by default," respectively, to differentiate between the two events. Rule 55(b)(2) provides that where a default has been entered, but "in order to enable the court to enter judgment ..., it is necessary to ... determine the amount of damages ... the court may conduct such hearings... as it deems necessary and proper...." This Court has referred to the interim "judgment" entered in such a situation as "an interlocutory default judgment." Ex parte Keith, 771 So.2d 1018, 1019 (Ala.1998). "A judgment by default with leave to prove damages is interlocutory and can be set aside at any time until entry of judgment on assessment of damages. It then becomes a final judgment." Maddox v. Hunt, 281 Ala. 335, 339, 202 So.2d 543, 545 (1967). "A default judgment that reserves the assessment of damages is interlocutory and may be set aside at any time; once the trial court assesses damages on the default judgment, the judgment becomes final. Rule 55(c), Ala. R. Civ. P.; Maddox v. Hunt, 281 Ala. 335, 202 So.2d 543 (1967)." Keith v. Moone, 771 So.2d 1014, 1017 (Ala.Civ.App.1997), rev'd on other grounds, Ex parte Keith, supra.
*897 Thus, the Russell Circuit Court entered on April 22, 2004, an "interlocutory default judgment"  a default was entered as to liability, but further proceedings were required to determine damages. Certainly, no final judgment had been entered; consequently, the petitioners had no need to resort to Rule 60(b), Ala. R. Civ. P., which is applicable only to final judgments. Rather, the proper rule under which to attempt to set aside the interlocutory default judgment was Rule 55(c). Nonetheless, this Court is committed to the proposition that "`[t]he substance of a motion and not its style determines what kind of motion it is.'" Breaux v. Bailey, 789 So.2d 204, 206 (Ala.2000) (quoting Evans v. Waddell, 689 So.2d 23, 26 (Ala.1997)). Because the substance of the petitioners' "motion to set aside default judgment" clearly conforms to Rule 55(c), we treat that motion as having been filed pursuant to that rule.
The petitioners make no distinction between an "interlocutory default judgment" and a "judgment by default" in asserting their right to relief, relying almost exclusively on cases addressing the analysis that the trial court should undertake in determining whether to set aside a judgment by default and the standard properly employed by the appellate court to review the trial court's determination.
"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court. Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)."
Ex parte Brookwood Health Servs., Inc., 781 So.2d 954, 956 (Ala.2000).
If we were dealing with a true judgment by default, where damages had been assessed and the judgment was otherwise "final," the petitioners would have an adequate remedy by means of an appeal, and mandamus would not be appropriate. E.g., Summit Photographix, Inc. v. Scott, 763 So.2d 956 (Ala.2000). As noted, however, the "interlocutory default judgment" is nonfinal and therefore would not support an appeal. Although the petitioners could have waited to challenge the trial court's denial of their motion to set aside the interlocutory default judgment until damages were assessed and a final judgment entered from which they could appeal, there are reasons such a delayed remedy might be inadequate in this case. Specifically, as discussed hereinafter, the nature of any prejudice that might result to the nondefaulting parties by the setting aside of a default judgment is an important part of the jurisprudential calculus developed for determining whether a trial court has exceeded its discretion in refusing to set aside a default judgment. The respondents earnestly argued to the trial court in response to the June 1 motion to set aside that they might well be prejudiced if the interlocutory default judgment were set aside, because of the possibility of a decreased memory of the details of the incident, which had occurred over two years earlier, by the two minor children. The further delay that would have occurred had the petitioners waited until after the scheduled August 2 jury trial on damages to seek review in this Court would necessarily have occasioned the potential for increased prejudice of that type. Accordingly, under the circumstances of this case, the ultimate availability of appeal represents a problematic remedy.
Nonetheless, to be entitled to issuance of the writ, the petitioner must still establish an "imperative duty upon the *898 respondent [judge] to perform," accompanied by the judge's refusal to do so. That, in turn, requires a determination of whether the trial judge has exceeded his or her discretion.
"Resolving questions of abuse of discretion requires an understanding of the extent of discretionary authority with which a trial judge is vested. By its plain language, Rule 55(c) confers broad discretionary authority upon trial judges. This discretion, however, is not boundless. Rule 1(c), Ala.R.Civ.P., states: `These rules shall be construed to secure the just, speedy and inexpensive determination of every action.' Thus, Rule 1 mandates that trial courts construe Rule 55(c) to effectuate an expeditious, efficient, and just resolution of litigation. This requires a trial court to balance two competing policy interests associated with default judgments: 1) the need to promote judicial economy and 2) the need to preserve an individual's right to defend on the merits. See C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, Civil, § 2693 (2d ed.1983). Application of the default judgment rule can easily lead to a polarization of these two objectives. Denying a motion to set aside a default judgment would further the goal of securing a `speedy' and `inexpensive' resolution of the action, yet would potentially deprive a litigant of an opportunity to present a viable defense. Conversely, granting a motion to set aside a default judgment would advance the cause of individual justice by insuring an adjudication on the merits, but would, in view of the concurrent delay and additional costs, impair the objective of promoting judicial efficiency. Reconciling these two opposing interests, therefore, presents a difficult task; and, for this reason, we provide trial courts with certain guidelines.
"First, when exercising discretionary authority pursuant to Rule 55(c), a trial judge should start with the presumption that cases should be decided on the merits whenever practicable. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3rd Cir.1984). The Alabama Constitution and our past opinions construing the default judgment rule support the conclusion that the interest in preserving a litigant's right to a trial on the merits is paramount and, therefore, outweighs the interest of promoting judicial economy. We have repeatedly held that the trial court's use of its discretionary authority should be resolved in favor of the defaulting party where there is doubt as to the propriety of the default judgment. Johnson v. Moore, 514 So.2d 1343 (Ala.1987); Elliott v. Stephens, [399 So.2d 240 (Ala.1981)]; Oliver v. Sawyer, 359 So.2d 368 (Ala.1978); Knight v. Davis, 356 So.2d 156 (Ala.1978). We have affirmatively acknowledged the disfavorable treatment afforded default judgments on the ground that such judgments preclude a trial on the merits. Oliver v. Sawyer, supra, at 369. We have also construed Rule 55(c) as contemplating a liberal exercise of a trial court's discretion in favor of setting aside default judgments. Ex parte Illinois Central Gulf R.R., 514 So.2d 1283 (Ala.1987). Moreover, Article 1, §§ 6 and 13, Alabama Constitution of 1901, by guaranteeing the due process rights of citizens, and Article 1, § 10, by holding inviolate a person's right to defend himself in a civil action to which he is a party, elucidates this state's commitment to protect an individual's right to attain an adjudication on the merits and to afford litigants an opportunity to defend. We, therefore, emphatically hold that a trial court, in determining whether to grant or to deny a motion to set aside a default *899 judgment, should exercise its broad discretionary powers with liberality and should balance the equities of the case with a strong bias toward allowing the defendant to have his day in court."
Kirtland v. Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600, 604-05 (Ala.1988).
We now phrase the question formerly framed in terms of whether a trial court "abused" its discretion in terms of whether the trial court "exceeded" its discretion. E.g., Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc., 901 So.2d 84 (Ala.2004); Johnson v. Willis, 893 So.2d 1138 (Ala.2004); and Zaden v. Elkus, 881 So.2d 993 (Ala.2003).
The Kirtland Court went on to hold:
"[A] trial court's broad discretionary authority under Rule 55(c) should not be exercised without considering the following three factors: 1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant's own culpable conduct."
524 So.2d at 605.
In Sampson v. Cansler, 726 So.2d 632, 634-35 (Ala.1998), we summarized the three Kirtland factors as follows:
"The first Kirtland factor is whether the defaulting party presented a meritorious defense. To present a meritorious defense, for Rule 55(c) purposes, does not require that the movant satisfy the trial court that the movant would necessarily prevail at a trial on the merits, only that the movant show the court that the movant is prepared to present a plausible defense. Kirtland, 524 So.2d at 605.
"`The defense proffered by the defaulting party must be of such merit as to induce the trial court reasonably to infer that allowing the defense to be litigated could foreseeably alter the outcome of the case. To be more precise, a defaulting party has satisfactorily made a showing of a meritorious defense when allegations in an answer or in a motion to set aside the default judgment and its supporting affidavits, if proven at trial, would constitute a complete defense to the action, or when sufficient evidence has been adduced either by way of affidavit or by some other means to warrant submission of the case to the jury.
"`The allegations set forth in the answer and in the motion must be more than mere bare legal conclusions without factual support; they must counter the cause of action averred in the complaint with specificitynamely, by setting forth relevant legal grounds substantiated by a credible factual basis. Such allegations would constitute a "plausible defense."'
"Kirtland, 524 So.2d at 606.
"Based on the record before us, we agree with the trial court that the Sampsons failed to present evidence of legal malpractice. However, the Sampsons did present evidence indicating that Terence Sampson did not cause the accident. Three affidavitsan affidavit from the state trooper who investigated the accident, Terence Sampson's own affidavit, and the affidavit of Terence Sampson's passengerall indicate that the accident was Cansler's fault. Thus, the defendants presented sufficient evidence that, if accepted by the factfinder as true, would constitute a defense. This issue regarding the cause of the accident warrants submitting the case to a jury.
"The second Kirtland factor is whether the plaintiff will be unfairly *900 prejudiced by setting aside the default judgment. The prejudice must be substantial. Ex parte Gilliam, 720 So.2d 902 (Ala.1998). Mere delay or increased costs are not sufficient to justify a refusal to set aside a default judgment. Gilliam. Ms. Cansler has not argued prejudice except in the form of delay and increased costs.
"The third Kirtland factor is whether the default judgment was the result of the defendant's own culpable conduct.
"`To warrant a refusal to set aside a default judgment, the defaulting party's actions must constitute willful conduct or conduct committed in bad faith, because "[n]egligence by itself is insufficient." Bad faith or willfulness is identified by "incessant and flagrant disrespect for court rules, deliberate and knowing disregard for judicial authority, or intentional nonresponsiveness."'
"Gilliam, 720 So.2d at 904, quoting Kirtland, 524 So.2d at 608."
Concerning the second Kirtland factor, whether the plaintiff will be unfairly prejudiced, this Court stated the following in Phillips v. Randolph, 828 So.2d 269, 278 (Ala.2002):
"Because Kirtland does not specifically state which party has the burden of proof relating to the second factor of the test established in Kirtland, we now take the opportunity to set out the principle of law that trial courts must apply in determining whether a plaintiff will be unfairly prejudiced if a default judgment is set aside. We hold that when a party files a motion to set aside a default judgment, the movant has the initial burden of making a prima facie showing that the plaintiff will not be unfairly prejudiced if the default judgment is set aside. If the movant makes a prima facie showing that the plaintiff will not be unfairly prejudiced, the burden then shifts to the plaintiff to present facts showing that the plaintiff will be unfairly prejudiced if the default judgment is set aside. Here, [the defaulting party] made no showing that [the plaintiff] would not be unfairly prejudiced if the default judgment was set aside. Consequently, we hold that the trial judge, in applying the second prong of the Kirtland test, did not err in denying [the defaulting party's] motion to set aside the default judgment."
Further, concerning the second Kirtland factor, this Court has explained:
"`[M]ere delay or increased cost is not sufficient to justify a refusal to set aside a default judgment.' Ex parte Gilliam, 720 So.2d [902] at 906 [(Ala.1998)]; see also Cunningham v. Gibson, 618 So.2d 1342, 1344 (Ala.1993). Moreover, more than mere allegations and conclusory statements is required in order to establish substantial prejudice. See Hall v. Chrysler Corp., 553 So.2d 98, 100 (Ala.1989)."
Summit Photographix, 763 So.2d at 960.
Additionally, we explained in Ex parte Gilliam, 720 So.2d 902, 906 (Ala.1998):
"As a general rule, a delay that results in loss of evidence may amount to substantial prejudice. Sanders v. Weaver, 583 So.2d 1326, 1329 (Ala.1991). However, [the nondefaulting party] presented no concrete facts indicating that any witnesses are now unavailable or that any evidence has been lost. Instead, he relies merely on his allegations and conclusions. We have held that mere allegations and conclusory statements do not constitute sufficient evidence to establish facts. See Hall v. Chrysler Corp., 553 So.2d 98, 100 (Ala.1989)."
*901 Application of the three Kirtland factors to the facts of this case results in the following conclusions.

I. Meritorious Defense

The affidavit of Nichols (now Richardson) directly disputes the circumstances described by the respondents in their complaint concerning the March 17, 2002, incident and, if believed by the fact-finder, would completely undermine the theories of liability asserted by the respondents. Thus, the petitioners have demonstrated that they are prepared to present "a plausible defense," i.e., one of such merit that it is impossible not "to infer that allowing the defense to be litigated could foreseeably alter the outcome of the case." Kirtland, 524 So.2d at 606.

II. Absence of Prejudice to the Nondefaulting Party

In their motion to set aside the default judgment, the petitioners, after noting the requirement of Kirtland that prejudice sufficient to justify denying a motion to set aside a default judgment must be substantial and that mere delay or increased costs do not constitute sufficient prejudice, offered the following analysis:
"In the instant matter, the plaintiffs filed their lawsuit less than 75 days ago. They filed for a default judgment only two days after the answer was due (the 30th day fell on a Saturday). The default judgment was entered two days after the application for default was made by the plaintiffs. As a result, the total time elapsed is less than 75 days. Certainly the plaintiffs cannot argue that they will be unfairly prejudiced by setting aside the default judgment in this case."
This Court recognized in Kirtland that "[t]he setting aside of a default judgment delays a final termination of the litigation" and, in addition to the fact that such delay necessarily frustrates or impedes a plaintiff's efforts to recover on his claim and causes him to incur additional costs, the delay might also "facilitate fraud and collusion, resulting in a loss of evidence, and hinder discovery." 524 So.2d at 607. Nonetheless, the Kirtland court presupposed that minimal prejudice could be effectively offset by awarding costs as a means of mitigating the prejudice. 524 So.2d at 607. As noted above, this Court has consistently held that mere delay or increased costs do not constitute sufficient prejudice to justify a refusal to set aside a default judgment. Ex parte Gilliam, supra, and Summitt Photographix, supra.
"Second, [the plaintiff] alleges that he has been substantially prejudiced because, he says, the passage of time has undoubtedly affected the memories of witnesses and the availability of evidence. As a general rule, a delay that results in loss of evidence may amount to substantial prejudice. Sanders v. Weaver, 583 So.2d 1326, 1329 (Ala.1991). However, [the plaintiff] presented no concrete facts indicating that any witnesses are now unavailable or that any evidence has been lost. Instead, he relies merely on his allegations and conclusions. We have held that mere allegations and conclusory statements do not constitute sufficient evidence to establish facts."
Ex parte Gilliam, 720 So.2d at 906.
In their reply to the motion to set aside the default judgment, the respondents asserted that
"[b]ased upon [the] young age [of Jeshaylin and Takory] and the emotional distress they have suffered, there is a possibility that with the passage of time, their ability to recall what happened at Family Dollar on March 17, 2002, would be at risk. In other words any impairment of the children's ability to provide *902 testimonial evidence would cause unfair prejudice to the plaintiffs."
The complaint stated that Jeshaylin was 8 years old at the time of the March 17, 2002, incident, and that Takory was 10 years old. Accordingly, it is self-evident that by the time the respondents filed their complaint on March 15, 2004, Jeshaylin was 10 years old and Takory was 12. In their answer and brief filed with this Court, the respondents offer no further specifics or suggestions of how further delay might prejudice them, other than to reiterate that, based upon the young age of Jeshaylin and Takory and the emotional distress they suffered as a result of the incident, "there is a possibility that with the passage of time, their ability to recall what happened at Family Dollar on March 17, 2002, would be hampered." Implicit in the prospective phrasing of this statement is the idea that the children's ability to recall what happened has not yet been hampered.
The petitioners argue to this Court the common-sense proposition that because the respondents chose to wait two years to file their action, they apparently were not at that time concerned that the passage of time would hinder the children's ability to recall the incident. When the petitioners filed their motion to set aside the default judgment on June 2, 2004, only 40 days had elapsed since the entry of the interlocutory default judgment and the hearing to determine damages was not scheduled to take place for another 60 days. Under the circumstances, we conclude that the petitioners have carried their "initial burden of making a prima facie showing that [the respondents] will not be unfairly prejudiced if the [conditional] default judgment is set aside." Phillips, 828 So.2d at 278. The burden then shifted to the respondents "to present facts showing that [they] will be unfairly prejudiced if the [conditional] default judgment is set aside." Id. As in Gilliam, supra, the respondents have "presented no concrete facts indicating that any witnesses are now unavailable or that any evidence has been lost. Instead, [they rely] merely on [their] allegations and conclusions. We have held that mere allegations and conclusory statements do not constitute sufficient evidence to establish facts." 720 So.2d at 906. Thus, an analysis of this Kirtland factor weighs in favor of setting aside the interlocutory default judgment.

III. Culpability of the Defaulting Parties' Conduct

In their motion to set aside the default judgment, the petitioners acknowledged that they had "negligently failed to protect their interest and to inquire as to the status of the case," but they asserted that there was "no evidence whatsoever indicating that their negligent actions were undertaken in bad faith or willfully." Rather, the petitioners asserted that the papers initiating the action had been sent by Nichols to Family Dollar's home office, but that those papers "were somehow lost or misplaced or never received by the home office." The petitioners pointed to the fact, as corroboration of their contention that they had failed to answer the complaint only through negligence, that as soon as their home office received notice of the action and the default judgment, they immediately contacted an attorney and their motion to set aside the default judgment was filed. In response, the respondents assert in this Court, as they did in the trial court, that "[r]ather than being diligent in this matter the petitioners chose to ignore the complaint," arguing that "[t]here is no indication in the motion or affidavit that copies of the summons and complaint were returned to Nichols or Family Dollar for lack of personal service." We presume they are referring to the fact that the copies of those materials Nichols *903 sent to the home office were not returned for any reason; Nichols and Family Dollar have not challenged the validity of the "personal service" effected upon them. The respondents further argue to this Court that the facts contradict the petitioners' assertion that they did not know that the claim had been filed against them, pointing to the "five separate occasions ... the respondents' previous attorney wrote letters ... to the petitioners apprising them of this matter; they ignored those communications." As noted, the last of the letters written by the respondents' counsel was sent November 19, 2002, approximately 16 months before the action was filed.
"To warrant a refusal to set aside a default judgment, the defaulting party's actions must constitute willful conduct or conduct committed in bad faith, because `[n]egligence by itself is insufficient.' [Kirtland, 524 So.2d at 607.] Bad faith or willfulness is identified by `incessant and flagrant disregard for court rules, deliberate and knowing disregard for judicial authority, or intentional nonresponsiveness.' Id. at 608."
Ex parte Gilliam, 720 So.2d at 906. The materials submitted by the parties in this case contain no facts suggesting that the petitioners acted willfully or in bad faith in omitting to respond to the complaint served upon them; to the contrary, although they were clearly initially negligent, they exhibited no intentional nonresponsiveness and they acted in a timely fashion once they became aware of the default judgment.

Conclusion
Each of the Kirtland factors, when applied to the particular circumstances of this case, weigh in favor of setting aside the interlocutory default judgment.
"We ... emphatically hold that a trial court, in determining whether to grant or to deny a motion to set aside a default judgment, should exercise its broad discretionary powers with liberality and should balance the equities of the case with strong bias toward allowing the defendant to have his day in court."
Kirtland, 524 So.2d at 605. Given all of the particular circumstances of this case, we conclude that the trial court exceeded its discretion in declining to set aside the interlocutory default judgment.
Accordingly, we issue the writ of mandamus and direct the trial court to set aside its order of July 19, 2004, denying the motion to set aside the interlocutory default judgment and to enter an order setting aside that interlocutory default judgment and restoring this case to its active docket.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and HOUSTON, SEE, BROWN, and STUART, JJ., concur.
LYONS and JOHNSTONE, JJ., concur in part and concur in the result in part.
WOODALL, J., dissents.
LYONS, Justice (concurring in part and concurring in the result in part).
I concur fully in that portion of the main opinion dealing with the merits of the question whether the interlocutory default judgment should be set aside.
I concur only in the result with respect to that aspect of the main opinion that recognizes a petition for a writ of mandamus as a means of reviewing an interlocutory default judgment. Rule 5(a), Ala. R. Civ. P., excuses the requirement of service on parties in default unless new or additional claims are raised. A hearing on damages will therefore not ordinarily be *904 adversarial, and its scheduling and trial should not require any protracted delay in the proceeding. Of course, here, by order of the trial court the party in default became a participant in the hearing to establish damages.
The writ should not issue where an adequate remedy by appeal is available. Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003), citing State v. Cobb, 288 Ala. 675, 678, 264 So.2d 523, 526 (1972). The petitioner must show why he will be disadvantaged by the trial court's taking the usually nominal additional time to determine damages before the petitioner has in hand a final appealable order. Of course, once a judgment for damages is entered, the petitioner would have the additional obligation of posting a supersedeas bond in order to be protected from execution of the judgment. I suppose that such a circumstance in a proper case might make remedy by appeal inadequate, but prejudice from having to post a supersedeas bond has not been raised as an issue in this case.
Nevertheless, I voted to order answer and briefs and to stay proceedings in the trial court. If I had it to do over again, I would deny the petition on the basis that the petitioners had an adequate remedy by way of appeal. However, at this stage of the proceedings, denial of the petition on this ground, after having participated in an order allowing delay of the proceedings in the trial court, would prove Mr. Bumble's point.[2]
JOHNSTONE, J., concurs.
WOODALL, Justice (dissenting).
I would deny the petition because Family Dollar and Regina Nichols have an adequate remedy by way of appeal. Therefore, I respectfully dissent.
NOTES
[1] A different attorney represents the respondents in the circuit court and in this Court.
[2] "`If the law supposes that,' said Mr. Bumble, ... `the law is a assa idiot.'" Charles Dickens, Oliver Twist, Ch. 51.